# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**DARLA MARIE DUKE**,

Plaintiff,

v.

**NANCY A. BERRYHILL**,
Commissioner of Social Security,

Defendant.

Case No. 6:16-cv-2176-SI

**OPINION AND ORDER**

Robert A. Baron and Katherine Eitenmiller. HARDER WELLS BARON & MANNING, PC. 474 Willamette Street, Suite 200, Eugene, OR, 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Alexis L. Toma, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Darla Marie Duke seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her application

for Disability Insurance Benefits ("DIB"). For the following reasons, the Commissioner's

decision is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Duke was born in 1982 and holds a General Equivalency Degree. AR 98. Prior to the onset of her alleged disability, Duke worked at various times as a caregiver/nurse assistant, fast food cashier, and telephone sales customer service representative. AR 72, AR 96-97. Between

October 2013 and June 2014, after Duke's alleged disability onset date, Duke worked as a certified nurse's assistant ("CNA"). AR 50, 72.

Duke filed for Disability Insurance Benefits on March 1, 2012, alleging a disability onset date of February 1, 2012. AR 48. Duke claimed that she was unable to work due to limitations resulting from anxiety, depression, post-traumatic stress disorder, hypothyroidism, fibromyalgia, sciatica, bilateral hip bursitis, scoliosis, and rapid heart rate. AR 212. Duke's application was initially denied on August 27, 2012 (AR 106-118), and was denied on reconsideration on July 29, 2013 (AR 120-136). Duke requested a hearing, which took place on September 17, 2014. In a decision issued November 14, 2014, ALJ Robert Spaulding denied Duke's claim for benefits. Duke sought review from the Appeals Council, which was denied. Duke now seeks review of the ALJ's decision.

**B. The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R.

§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also* *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C.  The ALJ's Decision**

Applying the sequential analysis, the ALJ concluded that Duke had not been disabled from the alleged onset date of February 1, 2012. At step one, the ALJ determined that Duke met the insured status requirements through March 31, 2016, and that Duke had engaged in substantial gainful activity between October 2013 and June 2014. Because Duke had engaged in substantial gainful activity for only a portion of the alleged period of disability, the ALJ continued the sequential analysis. At step two the ALJ found that Duke had the following severe impairments: lumbar spine arthropathy, degenerative joint disease of the knees, right hip vascular disorder, bilateral hip bursitis, hemangiolymphangioma, obesity, major depressive disorder, post-traumatic stress disorder, and social phobia. AR 50. Other medical conditions noted in Duke's records were determined to be non-severe. AR 51.

At step three, the ALJ concluded, first, that none of Duke's severe impairments met or equaled any listed impairment. AR 51-52. The ALJ then moved on to determine Duke's RFC.

The ALJ concluded that Duke had the RFC to perform sedentary work, as defined in 20 C.F.R.

§ 404.1567(a), but with some additional limitations. Specifically:

> [S]he can occasionally climb ramps and stairs and never climb
> ladders and scaffolds. Further, the claimant can occasionally stoop,
> but not kneel, crouch, and crawl. The claimant is additionally
> limited to no exposure to hazards, such as unprotected heights and
> moving mechanical parts. The claimant can perform simple and
> routine tasks and can have superficial interaction with coworkers
> and the public (defined as casual or perfunctory).

AR 53. In determining the RFC, the ALJ examined Duke's symptoms and their intensity. In

doing so, the ALJ concluded that not all of Duke's subjective symptom complaints were

credible.

At step four, the ALJ found that Duke was unable to perform her past relevant work as a

caregiver, cashier, or customer service person based on her RFC. AR 58. At step five, relying on

testimony by a vocational expert, the ALJ found that Duke could adjust to work existing in

significant numbers in the national economy. Specifically, Duke could work as a final assembler

(optical), as a film touch-up inspector, and as a sales and billing clerk. AR 59. Therefore, the

ALJ found that Duke had not been disabled since the alleged onset date of February 1, 2012.

AR 59.

Duke appeals the ALJ's decision insofar as it rejected portions of Duke's subjective

symptom testimony. Duke argues that the ALJ failed to provide clear and convincing reasons,

supported by substantial evidence in the record, to reject Duke's subjective symptom testimony.

Duke argues that her subjective symptom testimony should be fully credited, and that such

testimony would require a finding of disability. As a result, Duke argues, the Commissioner

failed to meet her burden at step five.

**DISCUSSION**

**A. Credibility Determination Standards**

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms.[1] *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

_____

[1] Duke argues that Social Security Ruling ("SSR") 16-3p should apply to the ALJ's consideration of her subjective symptom testimony. At the time Duke submitted her brief in August 2017, it was not entirely clear whether SSR 16-3p, which went into effect on March 28, 2016, applied retroactively to decisions issued prior to that date. In October 2017, however, the Social Security Administration republished SSR 16-3p and clarified that a reviewing court should "use[] the rules that were in effect at the time" of the decision under review. Because the ALJ's final decision from which Duke appeals was issued on November 14, 2014, SSR 16-3p does not apply. *See* SSR 16-3p, *available at* 2017 WL 5180304 (republishing SSR 16-3p).

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96–7p, *available at* 1996 WL 374186. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Further, an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen,* 80 F.3d at 1284. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson v. Comm'r Soc. Sec. Admin.,* 359 F.3d 1190, 1197 (9th Cir.2004).

**B. Duke's Testimony**

At the hearing, Duke described her typical day in 2013, before she returned to work as a CNA. AR 76. Duke explained that she would wake up, escort her children to the school bus, then come home and sit down. She would try to do small chores around the house, taking several breaks to sit. Duke would then retrieve her kids from the school bus at the end of their day. AR 76-77. Duke testified that at the time of the hearing, her typical day was essentially the same. AR 85, 88. Duke testified that she has difficulty breathing when walking down her long driveway. Duke accompanies her husband to the grocery store approximately once every four months, and picks up groceries on occasion, if she is out of the house for a doctor's appointment. Duke testified that she can be active for about a ten-minute period before needing to rest for about 30 minutes or more. AR 91.

Duke also testified that for nine months during her alleged period of disability, between October 2013 and June 2014, she worked four days per week as a CNA for seven and a half hours per day. AR 72. Duke testified that she was unable to independently roll or transfer patients due to her back and hip pain, and would require assistance in doing so. AR 92. Duke further testified that during this time she took between six and ten breaks of 15 to 20 minutes throughout the day to rest and elevate her feet. AR 92-94. Duke testified that she missed work at least one to two days per month due to her medical conditions. AR 72-73. According to Duke, after nine months Duke's employer "pretty much wanted [Duke] to leave," and Duke's doctors advised her to stop working due to swelling in her knees. AR 77-78.

**C. The ALJ's Decision**

The ALJ concluded that Duke's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. The ALJ gave several reasons for rejecting portions of Duke's testimony and subjective complaints. To the extent that these were

specific, clear and convincing reasons, supported by substantial evidence in the record, the Court must affirm the ALJ's credibility determination.

### 1. Work and Daily Activities

The ALJ concluded that Duke's work and daily activities called into question the credibility of her subjective symptom testimony. First, the ALJ found Duke's testimony regarding her ability to work during the nine-month period in which she was employed as a CNA to be non-credible, because Duke maintained her job for nine months, there was no evidence that she was ever disciplined for excessive breaks, and there was no evidence that Duke's employer was providing her with a special accommodation.

Evidence that, during a period of alleged disability, a claimant is able to continue past work activities, is a clear and convincing reason to discredit a claimant's testimony. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2005) ("Moreover, Greger told the VA in 2000 that he did carpentry work 'under the table' through 1999, well after his date last insured. The ALJ noted evidence that after his surgery Greger was 'active with yard work, work around the house, and that he was able to continue his past work activities as a contractor.'"). Duke characterizes this nine-month period as a failed work attempt, which ended because Duke's employer wanted her to leave, and Duke's doctors recommended that she stop working. To be sure, "[i]t does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed*, that he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007). Notably, "the Social Security Administration permits recipients of disability benefits to work on a trial basis [of less than nine months] without the trial work period adversely affecting their disability status." *Id*. at 1039 (citing 20 C.F.R. § 404.1592). Thus, the Ninth Circuit has suggested that "working for almost nine months is not evidence that

a disability benefit recipient is no longer disabled." *Id.* at 1039. Nonetheless, in this case, the ALJ concluded that because there was no objective evidence suggesting that this was a *failed* work attempt, it was inconsistent with Duke's own description of her functioning.

The ALJ also pointed to evidence that, although Duke testified at the hearing that she worked seven and a half-hour shifts four days per week, Duke told a medical provider that she was working "double shifts" at the time. *See* AR 1262. Given this record, the Court cannot say that it was irrational for the ALJ to conclude that Duke's work as a CNA for nine months demonstrated an ability to continue past work activities. Therefore, this was a clear and convincing reason to discredit Duke's testimony about the alleged severity of her disabilities.

In addition to Duke's work activity, the ALJ pointed to Duke's other activities as being inconsistent with her alleged symptom severity. Daily activities can form the basis of an adverse credibility finding where the claimant's activities either contradict his or her other testimony or meet the threshold for transferable work skills. *See Orn,* 495 F.3d at 639; *Molina v. Astrue,* 674 F.3d 1104, 1112–13 (9th Cir. 2012). For a credibility analysis, the ALJ "need not consider whether a claimant's daily activities are equivalent to full-time work; it is sufficient that the claimant's activities 'contradict claims of a totally debilitating impairment.'" *Whittenberg v. Astrue,* 2012 WL 3922151 at *4 (D. Or. Aug.20, 2012) (quoting *Molina,* 674 F.3d at 1113); *see also Denton v. Astrue,* 2012 WL 4210508 at * 6 (D. Or. Sept.19, 2012) ("While [claimant's] activities of daily living do not necessarily rise to the level of transferable work skills, they do contradict his testimony regarding the severity of his limitations."). A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir.2001); *see also Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998)

(requiring the level of activity to be inconsistent with the claimant's claimed limitations to be relevant to his or her credibility).

The ALJ noted that Duke told a medical provider in April 2014 that she went roller-skating every Saturday for about two hours. AR 1262. The ALJ further noted that Duke had also indicated, during the time of her alleged disability, that she went hunting. Duke's records reveal that she was injured in a hunting-related accident in October 2013. AR 1279. The ALJ also noted that Duke cared for her two young children. These activities, the ALJ concluded, indicated that Duke was capable of a higher level of functioning than she alleged.

An ALJ may not penalize disability claimants "for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722. Engaging in activities such as light household chores, cooking meals, and grocery shopping do not weigh against a plaintiff's credibility. *Vertigan*, 260 F.3d at 1050 ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Neither party has pointed to evidence in the record specifying how, exactly, Duke cares for her children, other than escorting them to and from the school bus each day. Duke testified that she could complete about ten minutes of household chores before needing to rest for at least 30 minutes. Thus, the fact that Duke cares for her children is not a clear and convincing reason to discredit her symptom testimony.

With respect to Duke's hunting accident, the record is sparse on the surrounding circumstances, and neither side has pointed to evidence that suggests Duke regularly hunted, or

how much walking this activity involved. As such, this was not a clear and convincing reason, supported by the record, to reject her testimony. Duke's statement to a medical provider that she went roller skating for two hours every weekend, however, is such a reason. It contradicts Duke's testimony that she is not able to walk to the end of her driveway comfortably, or to be active for more than ten minutes before needing a long break. As such, this was a clear and convincing reason, supported by the evidence, to reject Duke's testimony.

### 2. Inconsistencies Between Duke's Complaints and Other Evidence

The ALJ also concluded that the alleged severity of Duke's physical and mental symptoms was not fully consistent with her own presentation during medical exams, and was not supported by objective medical evidence in the record. The ALJ also cited several instances suggesting a tendency for Duke to exaggerate her symptoms.

Although Duke complained of low back pain, the ALJ noted that lumbar spine imaging and x-rays generally revealed unremarkable findings. See AR 490, 551. During physical therapy treatment between March 2012 and April 2012, Duke exhibited guarded movement. AR 422. In March 2013, Dr. Agsten noted that Duke's pain complaints seemed out of proportion with Duke's described injury. AR 480. In November 2012, a provider noted that Duke was moving and moaning constantly, but that Duke displayed normal gait and station and normal muscle strength and tone. AR 1001. During a visit to the emergency room for neck and back pain, Duke was able to walk without any sign of difficulty. AR 1169.

The ALJ also noted that Duke's behavior during a consultative physical exam in July 2013 strongly indicated that Duke was capable of greater functioning than alleged. AR 55, AR 1244-48). Despite subjective complaints of back pain and hip pain, testing returned normal results. Duke easily transferred from a chair to the exam table. She sat comfortably and was able to walk across the room and remove her shoes easily.

The ALJ also noted that Duke's assertion that she could not continue her work as a CNA due to knee pain and an ongoing medical need to elevate her lower extremities was not supported by the record. AR 55 (citing AR 1308-43, AR 1367-88). The ALJ found only one instance of medical advice in the record to elevate the lower extremities, which was given during one emergency room visit in May 2014, and did not suggest an ongoing need to elevate the legs. AR 1360. Duke has not cited to any evidence of a need to elevate her legs. Further review of the record reveals at least one other instance in which Duke was advised to elevate her limbs and to alternate heat and cold—in February 2014. AR 1283.

The ALJ also found Duke's mental health-related complaints to be inconsistent with Duke's performance during mental evaluations. During an August 2012 exam, Duke did not present with overt signs of anxiety. She was cooperative and carried on a normal conversation. Duke successfully completed several tests suggesting that her memory and concentration were intact. Further, although Duke's treatment records indicated anxiety and depression, Duke was capable of attending appointments and seeking emergency care. Although there were some indications of mental symptoms, the ALJ noted that mental status exams revealed a calm and cooperative demeanor and intact memory. At some point, Duke's mental symptoms became exacerbated, but the ALJ noted that this was due to Duke's cessation of all medication without tapering. Although Duke's mental complaints continued after resuming her course of medication, Duke had several unremarkable presentations.

A lack of objective medical evidence affirmatively supporting a claimant's alleged symptom severity, standing alone, may not serve as a clear and convincing reason to discredit the claimant's credibility when the ALJ has already determined that the claimant's impairments could produce some of the symptoms alleged. *See Rollins v. Massanari,* 261 F.3d 853, 857 (9th

Cir. 2001); *Reddick,* 157 F.3d at 722. Nonetheless, "it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Furthermore, a tendency to exaggerate may support an ALJ's finding of lack of credibility. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (upholding an ALJ's decision relying, in part, on a claimant's "tendency to exaggerate"). In addition to the clear and convincing reasons already given, the ALJ pointed to several inconsistencies in the record between Duke's alleged symptom severity and her presentation during medical exams, evidencing a lack of supportive objective evidence. Based on the record as a whole, these were specific, clear and convincing reasons to find Duke's testimony regarding the severity of her symptoms not wholly credible.

## CONCLUSION

The ALJ provided several clear and convincing reasons, which are supported by substantial evidence, to discredit Duke's testimony regarding the severity of her symptoms. Therefore, the ALJ relied on the proper evidence in determining Duke's RFC, and the Commissioner met her burden at step five. The Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 26th day of January, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge